Aaron M. Zigler (Cal. Bar No. 327318)
aaron@ziglerlawgroup.com
Nidya S. Gutierrez (Cal. Bar No. 330209)
nidya@ziglerlawgroup.com
**ZIGLER LAW GROUP, LLC**
308 S. Jefferson Street | Suite 333
Chicago, IL 60661
Telephone: 312-535-5995
Facsimile: 312-535-5773

*Counsel for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAUREN MORGAN and ARDAVAN DAVARI, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>PENSKE LOGISTICS, LLC, and PENSKE TRUCK LEASING, CO. L.P.,<br><br>Defendants. | Case No.:<br><br>**PLAINTIFFS' CLASS ACTION COMPLAINT** |

Plaintiffs, Lauren Morgan and Ardavan Davari, hereby bring this action, individually, and on behalf of a California class of current and former salaried employees, against Defendants Penske Logistics, LLC and Penske Truck Leasing, Co. L.P. (collectively "Defendants" or "Penske"). At the outset of the COVID-19 pandemic, Penske employed an excessively lean staffing model that subjected its salaried "managers" to excessively long hours for which they were paid straight time even though these "managers" spent most or all of their days performing nonexempt work. This lawsuit seeks to recover overtime compensation for Plaintiffs and their similarly situated co-workers who have been wrongly classified by Penske as exempt employees in the State of California.

## PARTIES, JURISDICTION, AND VENUE

1. This Court has subject matter jursidiction pursuant to 28 U.S.C. § 1332(a)(1), because the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between Plaintiffs (citizens of California), and Defendants (citizens of Delaware and Pennsylvania) of diverse citizenship.

2. Plaintiff Lauren Morgan is a natural person and is a citizen and resident of Huntington Beach, California. Penske previously employed Ms. Morgan in California as a "Southwest Area Human Resources Manager" ("Area HR Manager") beginning in February 2019. Throughout her employment with Penske, Ms. Morgan was classified as an exempt employee.

3. As an Area HR Manager, Ms. Morgan would generally work a forty-hour workweek. Her office was located in Santa Ana, California, but she would spend most days carrying out her duties in the field by traveling daily between Penske locations throughout Southern California, dealing with employee interpersonel issues, and conducting trainings.

4. Beginning in March 2020, at the outset of the COVID-19 pandemic, Ms. Morgan began working remotely from her home in California and her job duties

and hours changed drastically. Ms. Morgan began working about ten-hours a day performing nearly exclusively nonexempt work, as further described below, without receving overtime pay because Penske continued to classify her as an exempt employee. Ms. Morgan was working seven (7) days a week, including weekends and holidays from March 2020 until January 2021. In January 2021, Penske began rotating her schedule to work one full weekend per month. This arrangement continued until Ms. Morgan left her employment with Penske in June of 2021.

5. Plaintiff Ardavan Davari is a natural person and is a citizen and resident of Irvine, California. Mr. Davari began his employment with Penske in November 2018 as a "Recruiter" and was classified as an exempt employee. Mr. Davari kept his exempt classification throughout his employment with Penske.

6. As a Recruiter, Mr. Davari was working a forty-hour workweek and was responsible for candidate recruitment across multiple districts, including building relationships with universities to maintain a pipeline for all positions; ensuring that applicants are interviewed and processed according to Penske policies and procedures; reviewing applications and interviewing candidates; and representing Penske at career fairs and networking events. Mr. Davari worked from Penske's physical offices in Santa Ana, Carson, Montebello and La Mirada, California.

7. However, similar to Ms. Morgan, beginning in March of 2020, Mr. Davari's job duties and hours significantly changed. He began working remotely from his home in Paramount, California at the time, now as a "Case Manager." Mr. Davari began working about ten-hours a day performing exclusively nonexempt work, as further described below, without receiving overtime pay because Penske continued to classify him as an exempt employee. Mr. Davari was working five (5) days a week during this time and was expected to be on-call and available during the weekends.

8. Defendant Penske Logistics, LLC ("Penske Logistics") is a Delaware limited liability company with its principal place of business in Reading, Pennsylvania. Penske Logistics is a subsidiary of Penske Corporation and provides "contract carriage, distribution center management, transportation management, lead logistics, and supply chain consulting to major shippers worldwide."[1]

9. Defendant Penske Truck Leasing, Co. L.P. ("Penske Truck Leasing") is a Delaware limited partnership with its principal place of business in Reading, Pennsylvania. Penske Truck Leasing is a subsidiary of Penske Corporation and a "global transportation services provider, operating and maintaining more than 390,000 vehicles and serving customers from more than 3,000 locations in North America, South America, Europe, Australia and Asia. Product lines include: full-service truck leasing, contract maintenance, commercial and consumer truck rentals, used truck sales, transportation and warehousing management and supply chain management solutions."[2]

10. At all relevant times, Penske Logistics and Penske Truck Leasing have been "employers" within the meaning of the California Labor Code and all applicable Industrial Welfare Commission ("IWC") Orders.[3]

11. Upon information and belief, Penske Logisitcs and Penske Truck Leasing jointly employed Plaintiffs, as both entities appear on Plaintiffs' personnel records provided by Penske. As such, this Complaint refers to both entities collectively as "Penske."

12. At all times relevant herein, Penske maintained direct control over Plaintiffs' wages, hours, and working conditions.

---

[1] Our Companies, https://www.penske.com/our-companies/ (last visited July 31, 2023).

[2] *See id.*

[3] Cal. Labor Code § 1132.2 (2022); IWC Order No. 9-2001.

13. This Court has personal jurisdiction over Defendants because Penske maintains stores in this State, does business in this State, and because the acts complained of and giving rise to the claims alleged herein occurred in this State.

14. Venue is proper in the Central District of California in accordance with 28 U.S.C. § 1391(b)(2) because a substantial portion of the events forming the basis of this lawsuit occurred in this District.

## COMMON FACTUAL ALLEGATIONS

15. Penske has required its salaried employees, such as Plaintiffs and members of the Class, to work hours far in excess of forty-hours per week, performing nonexempt work, without the appropriate additional pay as mandated by California law.

16. Ms. Morgan, for example, was employed by Penske in California from approximately February 2019 to June 2021 as an Area HR Manager. Penske classified Ms. Morgan as an exempt, salaried employee.

17. Before March 2020, Ms. Morgan generally worked a 40-hour workweek, working 5 days a week, 8 hours a day performing managerial work related to human resources for Penske, including, for example, traveling daily between Penske locations from Fresno to San Diego dealing with employee interpersonel issues and conducting trainings.

18. Beginning in March 2020, however, Penske transitioned many of its employees to remote work. Ms. Morgan thus began working remotely from her home in Huntington Beach, California.

19. With this transition to remote work came an influx of new job duties. Penske imposed nonexempt duties on Ms. Morgan that required her to work much longer hours.

20. Specifically, beginning in March 2020, Ms. Morgan was required to work seven days a week, every week, without any days off. She was working about ten hours a day performing nearly exclusively nonexempt work.

21. The nonexempt duties that Penske imposed on Ms. Morgan during this time were related to responding to the effects of COVID-19 on Penske's broader business operations. For example, due to national and local restrictions aimed at mitigating the spread of COVID-19, Penske often had to reschedule its logistics-related services.

22. Ms. Morgan, was required to be continually available seven days a week to field phone calls from Penske employees who were calling out of work due to COVID-19. These were called "CPR" or "intake" calls. She was also required to conduct contact tracing on positive COVID-19 cases in her region. Essentially, each call required her to complete a scripted interview with the affected Penske employee, schedule a meeting with the Area, District, and Corporate teams to pass on the information gathered during the intake call, and then the HR Director and Corporate team would ultimately determine if it was necessary to clean the affected location or quarantine anyone else from the affected location.

23. Although the tasks involved in performing these scripted intakes, rescheduling Penske employees in the Southwest Area, and conducting contact tracing were ministerial in nature, each intake call took approximately one to one-and-a-half hour(s) to gather all of the required information. Ms. Morgan was fielding about nine of these calls per day.

24. Though Ms. Morgan repeatedly expressed her concerns about working seven days a week to her supervisors, she was repeatedly ignored. For example, when Ms. Morgan reached out to Human Resources Director Jennifer L. Diercksmeier, she was told via a January 20, 2021 email that she "may borrow [her] full year of PTO in advance" or is otherwise "eligible to apply for a leave of

absence," but offered no other solution or relief to Ms. Morgan's concerns about feeling overworked.

25. In addition, Penske, continued to pay Ms. Morgan as an exempt employee, without any overtime compensation.

26. Mr. Davari is a former Penske employee, who was originally hired in November of 2018 as a Recruiter for Penske in California. Penske classified Mr. Davari as an exempt employee, throughout his employment, which ended in September of 2021.

27. Due to Penske's increased clerical needs during the COVID-19 pandemic, Mr. Davari's job title changed from Recruiter to Case Manager, in March of 2020. As a Case Manager, Mr. Davari worked remotely from his home in Paramount, California.

28. Like Ms. Morgan, Mr. Davari's role as a Case Manager was also to perform nearly exclusively nonexempt work, including fielding intake phone calls from Penske employees who were calling out of work due to COVID-19 exposure.

29. Mr. Davari was also required to work long hours far exceeding forty hours a week, without overtime pay because Penske continued to classify him as an exempt employee.

30. Specifically, as a Case Manager, Mr. Davari worked approximately 50 hours a week, performing exclusively nonexempt work such as answering incoming phone calls related to an employee's COVID-19 exposure, taking note if a person should come to work or stay home due to COVID-19 exposure, documenting the conversation in order to enter the case into Penske's database, and reporting any additional issues. In so doing, Mr. Davari followed Penske's established protocol, despite his "manager" title, and did not employ any independent decision making in the process. Mr. Davari was also required to be on-call and available to field these intake calls on the weekends.

31. Although Mr. Davari's work duties were exclusively ministerial, Penske did not change Mr. Davari's exempt classification and did not provide him with any additional compensation for the overtime hours worked.

32. As of March of 2020, both Ms. Morgan and Mr. Davari, despite their "manager" job titles, were prevented from exercising discretion and independent judgment as their job duties during this time required them to follow an established company protocol.

33. Penske thus shifted the burden and costs of this extra work to employees like Ms. Morgan, Mr. Davari, and others.

34. By the conduct described in this Class Action Complaint, Penske has violated California law, including California Labor Code §§ 201, 202, 203, 204, 226, 226.7, 510, 512, 1198, 1174 and 1174.5; IWC Order 9-2001; and California Business and Professions Code §§ 17200, *et seq*. (collectively, the "California Wage and Hour Laws").

35. In order to remedy Penske's violations of the California Wage and Hour Laws, Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23.

## CLASS ACTION ALLEGATIONS

36. Plaintiff Morgan and Plaintiff Davari (collectively, "the Class Representatives"), bring this action pursuant to Rule 23(a), 23(b)(1), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of members of the following proposed Class:

> All salaried exempt employees who performed nonexempt work for Penske in California during the period beginning four years prior to the filing of this Complaint and who were not paid the correct amount or rate of pay for all hours worked over eight (8) hours in a day or forty (40) hours in a workweek.

37. The proposed Class Members are similarly situated to Plaintiffs and to each other. The Class Members worked for Penske in a similar capacity and in the same or similar positions as Plaintiffs, including, but not limited to, "HR Managers" and "Case Managers."

38. Excluded from the Class are: Defendants; any judge conducting proceedings in this action and the judge's parents, spouses, and children as well as any other member of the judge's family residing in the judge's household; counsel of record in this action and their parents, spouses, and children as well as any other member of counsel's family residing in counsel's household; counsel's employees; and the legal representatives, heirs, successors and assigns of any excluded person. Plaintiffs reserve the right to modify, change, or expand the class definition set forth above based on discovery and further investigation.

39. **Numerosity:** The exact number of the members of the Class is not presently known, but is so numerous that joinder of individual members is this action dispersed throughout California. Class Members are readily identifiable from information and records in possession, custody, or control of Defendants.

40. **Commonality**: There are numerous issues of law and fact common to Plaintiffs and Class Members that predominate over any issue affecting only individual Class Members. Resolving these common issues will advance resolution of the litigation for all Class Members. These common issues of law and fact include, but are not limited to, the following:

   a. Whether Penske violated the California Labor Code, IWC Wage Order 9-2001, and the California Business and Professions Code;

   b. Whether Penske failed to compensate Plaintiffs and the Class Members for hours worked in excess of 8 hours per workday and 40 hours per workweek;

   c. Whether Penske failed to provide adequate meal and rest breaks to Plaintiffs and Class Members;

     d.     Whether Penske misclassified Plaintiffs and Class Members;

     e.     Whether Penske failed to keep true and accurate time and pay records for all hours worked by Plaintiffs and the Class Members, and other records required by the California Labor Code and applicable IWC Orders;

     f.     Whether Penske's policy of failing to pay workers was instituted willfully or with reckless disregard of the law; and

     g.     The nature and extent of class-wide injury and the measure of damages for those injuries.

41.    **Typicality**: Plaintiffs' claims are typical of the claims of the other Class Members in that Plaintiffs, like all Class Members, are current and former exempt salaried employees who performed predominately nonexempt work for Penske in California and were not paid the correct amount or rate of pay for all hours worked over eight hours in a day or forty hours in a workweek.

42.    Defendants have acted, or refused to act, on grounds generally applicable to the Class. Plaintiffs, like all Class Members, were damaged by Penske's misconduct in that they suffered actual damages as a result of Penske's labor violations. Furthermore, the factual bases of Penske's misconduct are common to all Plaintiffs and represent a common thread of misconduct resulting in injury to all members of the Class. Plaintiffs have the same interest in this matter as all Class Members, and Plaintiffs claims arise out of the same set of facts and conduct as the claims of all Class Members. Plaintiffs and Class Members' claims all arise out of Penske's unlawful practice of misclassifying their employees as exempt workers even though they perform primarily non-exempt work.

43.    **Adequacy**: Plaintiffs have no interest that conflicts with the interests of the Class, understand and appreciate their duties to the Class, and are committed to pursuing this action vigorously. Plaintiffs have retained counsel competent and

experienced in complex employment class action litigation. Accordingly, Plaintiffs and their counsel will fairly and adequately protect the interests of the Class.

44. **Superiority**: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class. Even if Class Members could afford individualized litigation, the court system could not. Individualized litigation would increase delay and expense to all parties, and to the court system, because of the complex legal and factual issues of this case. Individualized rulings and judgments could result in inconsistent relief for similarly situated individuals. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### First Cause of Action
**Failure to Accurately Calculate and Pay Overtime Wages**
**(California Labor Code §§ 510 and 1198; IWC Order No. 9-2001)**
**On Behalf of Plaintiffs and the Class**

45. Plaintiffs reallege and incorporate by reference paragraphs 1 – 35 as if fully set forth herein.

46. California Labor Code section 1198 and Industrial Welfare Commission ("IWC") Wage Order No. 9-2001 provide it is unlawful to employ persons performing nonexempt duties without compensating them at a rate of pay either time-and-one-half or two-times that person's regular rate of pay, depending on the hours worked by the person on a daily or weekly basis.

47. Moreover, California Labor Code section 510 codifies an employer's requirement to compensate all employees who perform nonexempt work for all overtime hours worked.

48. Specifically, pursuant to section 510, Defendants are and were required to pay Plaintiffs and the members of the Class working more than eight (8) hours in

10

a day, more than forty hours (40) in a workweek, and the first eight (8) hours worked on the seventh day of work in any one workweek at the rate of no less than one and one-half times the regular rate of pay for an employee. In addition, any work in excess of twelve (12) hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. And any work in excess of eight (8) hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee.

49.  During the relevant time period, Plaintiffs and Class Members performed nonexempt work in excess of eight hours in a day, and/or in excess of forty hours in a workweek, and/or on the seventh day in a workweek.

50.  During the relevant time period, Penske intentionally and willfully failed to pay overtime wages owed to Plaintiffs and the members of the Class.

51.  Plaintiffs and the Class Members have been deprived of their earned overtime wages as a direct and proximate result of Penske's failure and refusal to pay such compensation.

52.  Moreover, Penske willfully and systematically discouraged and prevented Plaintiffs and Class Members from recording all overtime hours worked. Defendants' deficient timekeeping policies and practices and/or failure to employ any mechanisms for Plaintiffs and Class Members to track their time further prevent employees from recording all overtime hours worked and improperly place the burden on employees to calculate any overtime hours worked after-the-fact without real-time documentation.

53.  Defendants' failure to pay Plaintiffs and the Class the unpaid balance of overtime Compensation violates the provisions of California Labor Code sections 510 and 1198.

54.  Pursuant to California Labor Code section 1194, Plaintiffs and the Class Members seek and are entitled to recover unpaid overtime compensation, for

all overtime hours worked in excess of eight hours per day, in excess of forty hours per workweek, on the seventh day of work in one workweek and double-time pay for hours worked in excess of twelve hours per day, in addition to interest thereon, costs, and attorney's fees.

## Second Cause of Action
### Meal and Rest Period Violations
### (California Labor Code §§ 226.7 and 512; IWC Order No. 9-2001)
### On Behalf of Plaintiffs and the Class

55. Plaintiffs reallege and incorporate by reference paragraphs 1 – 35 as if fully set forth herein.

56. Plaintiffs and all Class Members regularly work and have worked in excess of five-hour shifts for Penske, without being afforded at least a half-hour meal break in which they were relieved of all work duties, as required by California Labor Code sections 226.7 and 512 and IWC Wage Order No. 9-2001. Plaintiffs and all Class Members have also worked ten-hour shifts for Penske, without being afforded a second half-hour meal break in which they were relieved of all duty, as required by California Labor Code sections 226.7 and 512 and IWC Wage Order No. 9-2001.

57. Further, Plaintiffs and all Class Members regularly work for Defendants, and have worked for Defendants, without being afforded at least one ten-minute rest break, in which they were relieved of all duty, per four hours of work performed (or major fraction thereof), as required by California Labor Code section 226.7 and IWC Wage Order No. 9-2001

58. Because Penske failed to afford proper meal periods to Plaintiffs and Class Members, it is liable to Plaintiffs and Class Members for one hour of additional pay at the regular rate of compensation for each workday that the proper meal periods were not provided, pursuant to California Labor Code section 226.7

and IWC Wage Order No. 9-2001, plus interest, costs, and reasonable attorney's fees.

59. Because Penske failed to afford proper rest periods to Plaintiffs and Class Members, it is liable to Plaintiffs and Class Members for one hour of additional pay at the regular rate of compensation for each workday that the proper rest periods were not provided, pursuant to California Labor Code section 226.7 and IWC Wage Order No. 9-2001, plus interest, costs, and reasonable attorney's fees.

### Third Cause of Action
### Failure to Make, Keep, and Preserve Employee Records
### (California Labor Code §§ 1174 and 1174.5)
### On Behalf of Plaintiffs and the Class

60. Plaintiffs reallege and incorporate by reference paragraphs 1 – 35 as if fully set forth herein.

61. Under California Labor Code section 1174, employers must maintain at least three years of accurate payroll records showing, among other items, the hours worked daily by, and the wages paid to, each of their employees.

62. Specifically, section 1174 mandates that employers:

> Keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments. These records shall be kept in accordance with rules established for this purpose by the commission, but in any case shall be kept on file for not less than three years.An employer shall not prohibit an employee from maintaining a personal record of hours worked, or, if paid on a piece-rate basis, piece-rate units earned.

63. During the relevant time period, Defendants knowingly and willfully violated California Labor Code section 1174 by failing to create and maintain accurate and complete payroll records showing all hours worked daily and the wages paid to Plaintiffs and the other Class Members. Defendants further violated Section

13

1174 by maintaining payroll records that systematically undercounted the number of hours that Plaintiffs and Class Members worked and undercalculated the regular rates of pay and wages due to them. Defendants are therefore liable under California Labor Code section 1174.5 to Plaintiffs and Class Members for providing inaccurate wage statements in violation of Labor Code section 1174.

64. Defendants denied Plaintiffs and the Class Members their legal right and protected interest in having available, accurate, and complete payroll records.

65. Accordingly, Plaintiffs and Class Members seek and are entitled to recover all penalties due.

**Fourth Cause of Action**
**Failure to Provide Itemized Wage Statements**
**(California Labor Code § 226)**
**On Behalf of Plaintiffs and the Class**

66. Plaintiffs reallege and incorporate by reference paragraphs 1 – 35 as if fully set forth herein.

67. California Labor Code section 226 provides that employers shall furnish their employees with accurate itemized statements in writing showing gross wages earned and total hours worked by the employee, among other items of information.

68. During all relevant times, Defendants knowingly and willfully violated California Labor Code section 226 by failing to provide Plaintiffs and the Class Members with accurate wage statements. Defendants further knowingly and willfully violated Section 226 by providing Plaintiffs and Class Members with wage statements that systematically undercounted the number of hours that Plaintiffs and the Class Members worked and undercalculated the regular rates of pay and wages due to them. Defendants are therefore liable to Plaintiffs and the Class Members for providing inaccurate wage statements in violation of Labor Code section 226.

14

69. Accordingly, Plaintiffs and the Class seek and are entitled to recover all penalties due for violations of section 226.

### Fifth Cause of Action
### Failure to Pay All Wages Upon Termination
### (California Labor Code §§ 201, 202, and 203)
### On Behalf of Plaintiffs and the Class

70. Plaintiffs reallege and incorporate by reference paragraphs 1 – 35 as if fully set forth herein.

71. California Labor Code section 201 provides that any discharged employee is entitled to all wages due at the time of discharge, and California Labor Code section 202 provides that, subject to few exceptions, these wages are due within seventy-two hours of the employee's discharge.

72. Where an employer willfully fails to pay discharged or resigning employees all wages due as required under the California Labor Code, the employer is liable to such employees under California Labor Code section 203 for waiting time penalties in the amount of one day's compensation at the employees' regular rates of pay for each day the wages are withheld, up to 30 days' compensation.

73. During the relevant time period, Defendants knowingly and willfully violated California Labor Code sections 201 and 202 by failing to pay Plaintiffs and Class Members no longer employed by Defendants all wages owed when their employment ended, including pay for doing nonexempt work. Defendants are therefore liable to Plaintiffs and the Class Members no longer employed by Defendants for waiting time penalties as required by California Labor Code section 203.

**Sixth Cause of Action**
**Failure to Timely Pay Wages**
**(California Labor Code § 204)**
**On Behalf of Plaintiffs and the Class**

74. Plaintiffs reallage and incorporate by reference paragraphs 1 – 35 as if fully set forth herein.

75. California Labor Code section 204 provides that all wages earned by any person in any employment between the 1st and 15th days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable the 16th and the 26th day of the month during which the labor was performed.

76. Section 204 further provides that all wages earned by any person in any employment between the 16th and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 1st and the 10th day of the following month.

77. Moreover, pursuant to section 204, all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular pay period.

78. Defendants intentionally and willfully failed to pay Plaintiffs and the other Class Members all wages dues to them for nonexempt work, within any time period permissible under Labor Code section 204.

79. Plaintiffs and the Class seek and are entitled to recover all remedies available for violations of California Labor Code section 204.

**Seventh Cause of Action**
**Unlawful Business Practices**
**(Business and Professions Code § 17200)**
**On Behalf of Plaintiffs and the Class**

80. Plaintiffs reallege and incorporate by reference paragraphs 1 –35 as if fully set forth herein.

81. Defendants' conduct, as alleged herein, has been and continues to be unlawful to Plaintiffs and the Class, to the general public, and to Defendants' competitors. Accordingly, Plaintiffs seek to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure section 1021.5.

82. Defendants' unlawful practices as alleged herein are violations of California law, and constitute unlawful business acts and practices in violation of Business & Professions Code section 17200, *et seq*.

83. A violation of section 17200, *et seq.*, may be predicated on the violation of any state or federal law. Here, Defendants' policies and practices of requiring employees, including Plaintiffs and the Class, to work overtime without paying them proper compensation violates California Labor Code sections 510 and 1198. In addition, Defendants failed to provide adequate meal and rest periods in violation of California Labor Code sections 226.7 and 512. Moreover, Defendants' policies and practices of failing to timely pay wages to Plaintiffs and the Class violate California Labor Code sections 201, 202, 203, and 204. Defendants also violated California Labor Code section 226, 1174, and 1174.5 by failing to provide accurate employee records and wage statements.

84. As a result of these labor violations, Defendants unlawfully gained an unfair advantage over other businesses.

85. Plaintiffs and the Class Members have been personally injured by Defendants' unlawful business practices, including but not limited to the loss of money and/or property.

86. Plaintiffs and the Class are entitled to restitution of the wages withheld and retained by Defendants during a time period that commences four years preceding the filing of this Complaint, as well as an award of attorney's fees pursuant to California Code of Civil Procedure section 1021.4 and an award of costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually, and on behalf of the Class, pray for the following relief:

A. Unpaid overtime pay, compensation for missed meal and rest periods, and monetary penalties as permitted by California State law;

B. Pre-judgment and post-judgment interest as provided by law;

C. Reasonable attorney's fees and costs of the action; and

D. Any other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs request a trial by jury on all issues so triable.

Dated: September 19, 2023          By: */s/ Aaron M. Zigler*

Aaron M. Zigler (Cal. Bar No. 327318)
Nidya S. Gutierrez (Cal. Bar No. 330209)
ZIGLER LAW GROUP, LLC
308 S. Jefferson Street | Suite 333
Chicago, IL 60661
Tel: 312.673.8427
aaron@ziglerlawgroup.com
nidya@ziglerlawgroup.com

*Attorneys for Plaintiffs and the Proposed Class*